(Lucas County, Ohio, Common Pleas. )

BERNHARD J. KOWENSTROT V. THE STATE OF OHIO.

Where a statute declares a certain act to be a crime or offense, but specifies some exceptions to the rule, a negative averment in the indictment or information, that the act charged does not come within any one of such exceptions, will be required where without such negative averment, the description of the crime or offense charged would not be complete. But where there is a subsequent exemption, or one occurring in a separate or distinct clause or part of the statute disconnected with the statutory description of the offense, the negative averment is unnecessary.

The act to regulate the practice of medicine in Ohio, passed February 27, 1896, is constitutional, is not a retro-active law, and does not infringe vested rights of physicians in practice at the time.

The Board of Medical Examiners, established by that act, is vested with the authority to grant or refuse certificates for the practice of medicine in Ohio; as the Board should determine; and courts have no authority to interfere with or review the action of the Board in that respect.

Petition in error to Police Court.

PRATT, J.

March 9, 1897, one Cady Markley made an affidavit before the clerk of the police court of the city of Toledo, in which he charged that on or about the 19th day of January, 1897, at Toledo, in said county and state, Kowenstrot, the plaintiff in error here, did knowingly and unlawfully practice medicine within the state of Ohio, without first having complied with the provisions of an act of the general assembly entitled "An act to regulate the practice of medicine within the state of Ohio, passed Februar 27, 1896," and the specific acts charged as having been so in violation, were that he did "for a fee, to-wit, the sum of twenty-five dollars, prescribe, direct and recommend for the use of one Kresentia Wissenberger, a certain drug. medicine or agency, to-wit, one bottle of dark liquid and one bottle of whitish liquid, the name and composition whereof is unknown to affiant, for the treatment, care and relief of a certain bodily infirmity or disease, the name and nature whereof, is to the affiant unknown;" and the affidavit charged that at the time of such prescription, the accused had not received from the State Board of Medical Registration and Examination, a certificate entitling him to practice medicine in accordance with the provisions of such act of the legislature. It will be seen that this affidavit charges:

1. That the offense complained of was committed on, or about the 19th day of January, 1897, at Toledo, in the county of Lucas, and state of Ohio.

2. That the offense charged was, The unlawful practice of medicine.

3. It sets forth specifically the acts so charged to have been done by the accused; and.

4. That such acts were done without the accused having first received the required certificate

A warrant was issued upon this affidavit, upon which the accused was arrested and he appeared on the 16th of March, when an information was filed by the prosecuting attorney, in form substantially following the affidavit. A motion to quash was filed, overruled by the court; a plea in abatement filed and denied; a demurrer filed, and overruled. Motion to require affidavit to be made more specific, made and overruled. Thereupon a jury was demanded, impaneled, a trial had, a verdict of "guilty" rendered, the accused fined; motion made in arrest of judgment and for a new trial; overruled, and a bill of exceptions filed, embodying all he evidence introduced in the case, all the offers of evidence refused together with the charge of the court.

Without going into particulars, it may be said that the defendant in the police court availed himself of every objection and took every exception possible, and the whole record is here now before the court, upon this petition in error, the petition covering every possible allegation of error. The bill of exceptions alone, covers some fifty pages of type-written matter. The case has been fully argued orally, and counsel have filed extensive briefs with a multitude of citations, authorities and decisions.

I have examined the record and briefs of counsel carefully. I have not considered it necessary, nor would it be possible with e opportunities allowed me in the press of other duties—to examine all the authorities cited and do I not think it now either necessary or profitable to review all the points discussed by counsel in the order of their discussion.

An examination of the different provisions of the statute on the question, and the consideration of these, in the light afforded by the Ohio decisions, will be, as I think, all that will be necessary as a proper basis of my action in this case.

THE STATUTE.

A statute, in some form, providing restrictions upon the practice of medicine in Ohio, has been in force nearly, if not quite the entire existence of the state. The statute, as it stood immediately prior to the enactment of the one here under consideration, is found in the revision of 1890, an was passed in the year 1885, and, so far as necessary to be here considered, is found under the head of Sec. 4403, as it then stood, with

two supplementary sections,—a and b—neither of which, however, is it necessary to particularly consider in this connection. Sec. 4403 as it then stood, required that in order to practice medicine within the state, the practitioner should be a graduate of a reputable school of medicine, or that he should have a certificate of qualification from a state or county medical society, with certain exceptions as to length of time of practice, &c.

The statute under which this prosecution is had, was passed in February, 1896, and is embodied in this section 4403, as then amended, 4403 a and b, as they were before, and new sections 4403 c, d, f and g. Secs. a and b are not applicable to this case, and e relates to midwifery. The amended Sec. 4403 establishes a board of medical registration, and provides for the appointment of the members of that board, the board to consist of seven members, who should all be physicians in good standing in their profession, representation being to the different schools of practice in the state, no one of whom should have a majority of the whole board.

Sec. 4403c provides as to the requirements for the practice of medicine and surgery, for the granting of a certificate for such practice by the board, and the evidence upon which, and the circumstances under which it should be granted. Sec. 4403d provides for the record of the certificate in the office of the probate judge of the county in which the practitioner resides, and that it shall be left for record before he enters upon the practice, and makes a certified copy of such entry prima facie evidence of all the matters and facts contained therein. Sec. 4403f provides as to who shall be regarded as practicing within the meaning of the act, and provides certain limitations as to the applicability of the provisions of the statute to certain persons, and under certain circumstances. Sec. 4403g provides the penalty and provides specifically as follows:

"Any person practicing medicine or surgery as defined in Section 4403f in this state without having first complied with the provisions of 4403c and 4403d, except as therein provided, shall be deemed guilty of a misdemeanor."

In order to determine whether errors were committed by the police court in the proceedings and judgment now under review, and considering only what appears upon this record, I find that the questions made naturally fall into two classes:

1. What was it necessary for the state in the prosecution, under these provisions of the statute, to allege and prove in order to maintain the prosecution?

2. What was it competent for the accused to show upon his defense?

I.

As to first of these questions: Counsel for the state, to quote from his brief, says: "The whole crime consists in practicing medicine without having obtained the certificate above mentioned, and in doing it for a fee." Counsel for the plaintiff in error states the plaintiff's position in substantially the same terms: "The theory of the state has been throughout the case, that all they are required to prove in order to sustain a conviction is: (1) the absence of a certificate duly registered; (2) a practicing of medicine for a fee;" This position of counsel for the state has been controverted by counsel for the plaintiff in error throughout the whole course of the proceedings in this case; (1) by their attacks upon the affidavit, warrant and information; (2) by their motion to discharge the accused for failure of proof; (3) by their exceptions to the charge of the court.

The motion to quash and the demurrer are general in terms; that is, that the facts stated are not sufficient to constitute an offense. The motion to dismiss is upon the ground: "That the state failed to show that said certain drug, medicine or agency was not administered in a case of emergency, or the domestic administration of family remedies." The exceptions to the charge, upon this point, are as follows:

"The defendant by his counsel objected and excepted to the following portion of the charge of the Court:

"The court will instruct you that if you find from the evidence in the case as submitted, beyond a reasonable doubt, that this defendant has prescribed, directed or recommended medicine, or any other agency for treatment or cure, without having a certificate from the state board of medical registration and examination, and having the certificate registered or recorded with the probate judge,—I say—if you find from the evidence in this case, that he has—without having a certificate from the state board, and without having it recorded with the probate judge, it is your duty to find the defendant guilty.

"The defendant by his counsel objected and excepted to the following portion of the charge of the court:

"The thing for you to deterimne from the evidence, and the law, as given to you by the court, is, whether this defendant did, beyond a reasonable doubt, in your mind, prescribe, direct or recommend medicine, or any other agency for treatment, for a fee; and if you find that he did recommend, prescribe and direct, and receive a fee for treatment, without having a certificate from the State Board of Medical Registration and Examination, and without having it recorded with the probate judge, then it is your duty to find him guilty."

It does not appear that counsel for the accused submitted to the court any requests as to what they desired the court to charge upon this point; but the exceptions made do fairly raise the question as to what the state was required to prove, in order to convict. Counsel for plaintiff in error maintained, and still maintains, that the state must, in its charge, and by its proof, maintain the negative of the following provisions of Sec. f: "Provided, however, that nothing in this act shall be construed to prohibit

service in case of emergency, or the domestic administration of family remedies." In support of this position, they cite the decisions of our own state as follows: Horn v. State, 1 O. S. p. 16; Cheadle v. State, 4 O. S. 477 Moody v. State, 17 O. S. p. 111; Stanglein v. State, 17 O. S. 453.

Counsel for the state have cited: Becker v. State, 8 O. S. p. 392; Billingheimer v. State, 32 O. S. p. 435; and State of Ohio v. Hutchinson, decided by the supreme court of Ohio, January 26, 1897.

As the result of my examination of all these cases, it seems to me that the question, whether a proviso of the character contained in this statute, must be negatived by the prosecution in order to convict, depends upon whether such proviso is a necessary part of the definition or description of the offense charged. In other words, if the offense charged would not be complete without an averment of the negative, the charge must be so negatived by the prosecution; but, if the description or definition of the offense is otherwise complete, and the proviso only limits its application or operation, either as to the time, place or person, then such limitation is a matter of defense only, and it is for the defendant to show that he is, by reason of some of these provisos, not chargable with the offense. This being, as it seems to me the important question in this case, I will briey refer to the cases cited:

Hirn v. Ohio, 1 O. S. 16. This well known case arose under the so-called Liquor Laws of 1851, in which it was provided that nothing contained in the section should be construed as to make it unlawful to sell spirituous liquors for medical and pharmaceutical purposes. Judge Bartley gave a very lengthy opinion, discussing the law generally, and especially in reference to the indictment being defective, on the ground, as was then claimed, that it did not contain an averment that the sale of the liquor was not for medicinal or pharmaceutical purposes, and on page 24, after discussing the different rules held in the different courts, the judge says: "It is requisite that every indictment should contain a substantial description of all the circumstances descriptive of the offense as defined in the statute. so as to bring the defendant precisely within it. And the only substantial reason for requiring this negative averment at all, is, that without it, the description of the offense would not be complete. When, therefore, the matter of the proviso or exception in the statute, whether it be embraced within what has been termed the enacting clause, or not, enters into, and becomes a part of the description of the offense, or a material qualification of the language which defines or creates the offence, the negative allegation in the indictment is requisite. But where it is a subsequent exemption, or occurs in a separate and distinct clause or part of the statute, disconnected with the statutory description of the offense, the negative averment is unnecessary."

Cheadle v. State, 4 O. S. 477. In this case the offence charged was the selling of spirituous liquors which had not been inspected. The court says in its opinion, that when the negative matter was inseparably connected with the statutory description of the offense, it must be alleged and .proven.

Decker v. State, 8 O. S. 392. The sale of liquors to be drunk on the premises. Held by the court that it was not necessary to a perfect description of the offense to allege that it was not wine manufactured of the pure juice of the grape, &c.

Moody v. State, 17 O. S. 111. The charge there arose under the provision of the statute that to administer any medicine, or use any instrument to destroy a child of a pregnant woman, was unlawful, unless it was necessary to save the life of the mother, should constitute an offense. The court there held that it was unnecessary to a description of the offense to allege that it was necessary to save the life of the mother; that his was a part of the description of the offence.

Stanglein &c v. State, 17 O. S. 453. In this case the indictment was for bigamy and it was held not necessary to negative the exception in the statute that nothing contained in it, should extend to any person whose husband or wife was absent and unheard of for the space of five years. The court held that to be a proviso to be availed of upon the defense, and not necessary to le negatived by the state.

Billingheimer v. State, 32 O. S., 435. This was a prosecution for performing common labor upon Sunday. The statute made common labor on Sunday an offence, with a proviso added, that the offence should not extend to those who conscientiously observed the seventh day of the week as the Sabbath. The second clause of the syllabus is as follows:

"A negative averment to the matter of a proviso in a statute, is not requisite in an information, unless the matter of such proviso enters into and becomes a part of the description of the offence, or is a qualification of the language defining or creating it."

The court in that case, in the course of its opinion, refers to the Hirn case in 1 O. S., remarking that in that case the matter of the proviso pointed directly to the character of the offence, and made a material qualification of the statutory description of it, but that in the case then being decided, the proviso was not a part of the description, but in the nature of a personal privilege.

This case seems to be directly in point here, the administering of medicine in a case of emergency, or an administering of family remedies, being not jn my judgment apart from the description of the offence, but in the nature of a personal privilege, granted under particular circumstances.

A very late decision by the supreme court is the Hutchinson case was made in construing the Pure Food Law. In that case the affidavit charged the unlawful sale of beer, without negativing the proviso in specification 7, clause b. of sec. 3, that the provisions of the act should not apply to

mixtures or to compounds that were distinctly labelled as such. Held by clause 1 of the syllabus:

"The proviso contained in section 3, of the pure food laws of the state, as amended April 22, 1890, (87 Laws, 248,) applies to the whole act, and is not descriptive of any particular offense therein defined; and, for such reason, a negative averment of the facts within the proviso, is not required in an affidavit, charging an offense against the act; but the facts may be offered in evidence as a defense under the plea of not guilty."

I am of the opinion from these several decisions of the supreme court, that the contention in this case on the part of counsel for the state, is correct, and that the action of the police court, is, so far as this point is concerned, not erroneous.

I will, in this connection, refer to a decision of the circuit court for this circuit made in a case which excited at the time, considerable interest in this community—Quigley v. The State, as published in the 5th Circuit Court Reports, 638. In that case there was a proviso in the law then under consideration, to the effect that the statute, which compelled children under fourteen years of age, to attend school, should not be operative in any school district where the seating accommodations were insufficient; and it was held that the burden of proving that there was not sufficient seating accommodations, was incumbent, in the first instance, upon the defendant. (See syllabus of case, also opinion of the court, page 658.)

II.

The defendant, in making his defense, offered no evidence tending to show that he administered or prescribed in the case in question, under either of the conditions named in the proviso in sec. 4403f. He offered no evidence tending to show that he was acting in a case of emergency, or in a case of domestic application of family remedies. Neither did he offer any evidence tending to bring himself within any of the provisions applying to commissioned medical officers of the United States army; nor any evidence bringing him within the language of the further provisions following in the paragraph of the act. He did offer a large amount of evidence, the purpose and intention of which, was to bring himself within the provisions of sec. 4403c, providing the steps necessary to be taken in obtaining a certificate from the Board. Without going into details as to these offers, I am of the opinion that they are all offers which should have been made to, and passed upon, by the Board of Physicians; that said board was the forum created by the law for the purpose of passing upon the evidence offered, and that no part of this evidence was competent to go to a jury for the purpose of determining the qualifications of the accused to practice medicine in this state.

I see no serious ground upon which to base the claim that the accused would have a right, before a jury, to go into the examination of the question as to his right to

receive a certificate, and in my opinion, the criticism made upon any action of the board, in withholding the certificate from him, could not properly be made before the jury. It was not the province of the jury to determine these questions, and is not the province of this court on this hearing, to consider them, or to consider why it was, or is, that the accused has not received this certificate. The purpose of the law is the protection of the public health and the safety of the lives of the people of the state. The legislature was the judge of the proper forum to determine the right of any and every man seeking to deal with this health and safety as a physician and surgeon, and neither a jury or a court had any right to set aside, or even criticise the action of the legislature in that respect, so long as it has provided such a forum, and so long as it has provided for the protection of vested rights of the citizen.

So far as the constitutionality of this act is concerned, counsel for the accused disclaim an intention to question its general provisions, but they do claim that in its operation it goes beyond the legislative power, and that it does interfere with the vested rights of the accused, is retractive, and impairs the obligation of contracts. These questions are discussed at great length in the brief of counsel for plaintiff in error, and a great number of authorities are cited. In the argument of the case, the decision of Judge Pugh, of the Franklin common pleas, in the case of State of Ohio v. Ottman, was referred to by counsel for the state and a manuscript copy of the decision was furnished me. Since that time this decision has been published, and without discussion on my part I accept this decision so far as its constitutionality is concerned.

Without entering into a discussion of the authorities cited upon the question of interference with vested rights and the retroactive character of the statute, I think is sufficient to say that the legislature was the judge as to any changes which the public interest required to be made in the restriction or regulation of the practice of medicine or surgery, and that so long as it provided a constitutional forum to determine questions that might arise as to the right of any person who desired to practice the profession in the state, and gave a reasonable opportunity before such law should go into effect, that is a reasonable time within which those theretofore practicing the profession might comply with the provisions of the new law, it would not be an interference with any vested right of the physician. If the legislature had failed in, and by the law, to provide such a forum, or if it had made the act to take effect without giving a reasonable time and opportunity on the part of the physician theretofore practicing, to bring himself within its provisions, then it might have been beyond the constitutional power of the legislature to so provide. But I find nothing in this act rendering this law subject to this objection. As

long ago as the year 1831, Judge Lane, in delivering an opinion in the case of Jordon v. Overseers of Dayton (4 Ohio Rep., 295 to 310.) lays down certain principles which have since that time formed the basis of a large class of decisions in reference to the exercise of the police powers of the state to provide for the general welfare of the public, and these regulations have been made in reference to matters that are not of themselves immoral in character. Judge Lane, on page 309, names numerous classes of occupations the exercise of which may thus be regulated, and among them that of a physician. Among other things, he says:

"In all these cases the interpretation of the law is justified by the obvious principle that although a man's rights to his own are absolute and indefeasible, yet these rights must be so used as not to infringe the rights of others, and may be so regulated as to promote the general good."

Great stress is laid by counsel for plaintiff in error on the case of Driscoll v Commonwealth, decided in the Court of Appeals of Kentucky, and reported in Vol. 20 of the Southwestern Reporter, page 431. Having read this case carefully, I am of the opinion that it sustains the power of the legislature to enact a law such as this, even as against a physician, who has before the enactment of the law practiced the profession. The law there under consideration, among other things, provided that a physician who had practiced for ten years prior to the passage of the law, should be entitled to receive a certificate mentioned in the law; and the court holds that not having practiced for the full ten years, although it had appeared that he had practiced for some time prior— he was still liable, not having received his certificate. The court emphatically sustains the law in that case, upon the ground that it was within the inherent power of the legislature to prescribe such rules to govern the practitioner as would protect the health and safety of the people, and cited numerous cases.

I fail to find, therefore, that there was any error in the refusal of the police court to permit the plaintiff in error to introduce any of the evidence offered by him on his defense as to his rights or qualifications to practice the profession of medicine at the time and in the manner charged, he not having received the required certificate.

Counsel for defendant below requested the court to charge the jury as follows:

"If the jury shall find from the evidence that the defendant, Bernhard J. Kowenstrot, prior to the 27th day of February, 1896, the date of the passage of the act upon which this prosecution is based, and prior to the 27th day of May, 1896, had been for one or more years engaged in the practice of medicine in the state of Ohio, and during such time was a resident of said state, and during such time was a medical practitioner and a graduate of a reputable school of medicine, then it will be your duty to acquit the defendant."

This request the court refused to give, and his counsel excepted.

And defendant's counsel also excepted to the following, which the court did charge, upon this point:

"It is not the province of this court, or this jury, to determine whether this defendant is entitled to a certificate or registration from the board, and, gentlemen of the jury, let not your minds be confused on that subject. The only thing for you to determine is, whether this defendant did practice, did prescribe, did direct, recommend, for a fee, without having this certificate."

The question as to whether the court was right in refusing the requests, and in giving the charge, as given upon this point, is to be determined by the conclusion to which I have already come, as to the rejection of the testimony offered by the defendant upon the trial; and, if I am right in that, the court committed no error, either in the refusal or in the charge given.

It is, however, strenuously urged that if the accused is not allowed to make this defense in this protection, he is without remedy; that he cannot proceed by mandamus to compel the issuance to him by the board of the necessary certificate, and is therefore, as counsel express it, in a hole!" It is said that mandamus has been denied in a case brought in Franklin county.

On the other hand, counsel for the state cite the case of The State ex rel Ins. Co. v. Moore, 42 O. S.. 103. In this case the rules applicable to a proceeding in mandamus against an officer charged with a duty are clearly stated. Clauses 2 and 3 of the syllabus are in point, and are a follows:

"Where a public officer is called upon to perform a plain and specific public duty, positively required by law, ministerial in its nature, calling for the use of no discretion, nor the exercise of official judgment, his performance of such duty may, upon his refusal, and in the absence of other means of relief, be enforced by mandamus."

"When such officer, in determining upon the performance of a public duty, is called upon to use official judgment and discretion, his exercise of them, in the absence of fraud bad faith and abuse of discretion, will not be controlled or directed by mandamus."

The court, by Owen, J., after discussion of the question as to whether mandamus would lie against the superintendent of insurance to compel the granting of a certificate, referring to the proceeding there, says that it is not brought to review or reverse the decision of the superintendent, but that if he had the power to decide, then in the absence of fraud, bad faith and gross abuse of discretion, his decision is final," and further states, as a general principle, that wherever in determining the course of official action, he is called upon to use official judgment and discretion, his exercise of them, in the absence of bad faith, fraud and gross abuse of discretion, will not b controlled or directed by mandamus," citing numerous authorities; and these rules seem

to me clearly to be applicable to any question arising between any physician of the state and this board. The place to investigate the charges made so broadly by counsel for the accused in this case, against this board, might, in my judgment, clearly be matters of investigation before the court, when properly charged in a petition in mandamus, by the plaintiff in error. There are sundry other claims made by plaintiff in error, to which I will but briefly allude.

1. It is claimed that the affidavit is insufficient in its charge as to the place at which the alleged offense was committed. It states that it was in the city of Toledo, county of Lucas and state of Ohio; which, I may say without discussion, seems to me to be sufficient.

2. It is alleged that it was error to permit proof of the administering of the drug on the 11th of January—it being alleged to have been administered on or about the 19th. The evidence, however, shows that whilst the first administration was on the 11th, it was to be a continued use, and that it was again renewed upon the 19th. I think the date is alleged with sufficient certainty.

3. The claim made—that the .verdict of the jury is not sustained by the evidence—it seems unnecessary to discuss. I can only say that I see no reason for questioning the verdict of the jury.

4. The objection made to the charge of the court—that the court did not sufficiently. at the request of counsel for defendant, define the term, "reasonable doubt," is not, I think, well taken, the court having—as appears on page 46 of the bill of exceptions—quoted substantially from the well known definition given in the 12 Ohio Repts., and, without extending this already too lengthy opinion, I will only say that I find no material error to the prejudice to the accused in the record before me for which, in my opinion, the judgment of the court below should be reversed, and it is therefore affirmed.